THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| IN RE: PETITION OF<br>BENJAMIN WITTES, ET AL | )<br>)<br>)<br>)<br>)<br>) | Misc. No. 18-00125 (BAH) |

**THE GOVERNMENT'S RESPONSE TO PETITION FOR ORDER DIRECTING RELEASE OF THE "ROADMAP" TRANSMITTED BY THE WATERGATE GRAND JURY TO THE HOUSE JUDICIARY COMMITTEE IN 1974**

**INTRODUCTION**

In this petition, Benjamin Wittes, Jack Goldsmith and Stephen Bates ("petitioners") request an order – pursuant to the Court's "inherent authority" – requiring the National Archives and Records Administration ("NARA") to disclose the work of the first Watergate grand jury, which was eventually sent as a report to the House Judiciary Committee in 1974. This is not the first such petition for the so-called "Roadmap." In 2011, another researcher sought its unsealing, as part of a broad request for materials associated with each of the three Watergate grand juries. *See generally, In re Petition of Geoffrey Shepard*, 800 F. Supp. 2d 37 (D.D.C. 2011). In connection with that matter, the government provided the Court with a copy of the Roadmap in camera and ex parte, together with an explanatory declaration from NARA's Chief of the Special Access and FOIA Branch. On September 20, 2018, the *Shepard* petition was transferred to this Court, together with this related petition. On October 4, 2018, the government provided a status report in the *Shepard* matter, and on October 11, 2018, this Court issued an order directing NARA to process and release those portions of the Roadmap to which NARA had no objection to releasing because they are otherwise publicly available through the House Judiciary Committee report or elsewhere in the public domain. *See In Re Petition for Order Directing*

*Release of Transcripts of Testimony Before Watergate Grand Juries*, Misc. No. 11-0044, document #26 (Oct. 11, 2018).

For this reason, and the reasons that follow, this Court should (1) determine that this petition is largely moot in light of the forthcoming release of the redacted Roadmap, and (2) with regard to still secret grand jury information, hold the remainder of the petition in abeyance pending the D.C. Circuit's decision in the case of *McKeever v. Sessions*, D.C. Cir. No. 17-5149 (oral argument heard September 21, 2018).

## ARGUMENT

### I.     THE PETITION IS LARGELY MOOT

The petition at issue here seeks an order directing NARA to release the Roadmap. This Court, in the *Shepard* matter, has already issued such an order. *In Re Petition for Order Directing Release of Transcripts of Testimony Before Watergate Grand Juries*, Misc. No. 11-0044, document #26 (Oct. 11, 2018). The forthcoming release constitutes a majority of the Roadmap and its supporting documents. As NARA has explained, the Roadmap consists of a two-page summary statement, followed by 53 individually numbered statements ("Statements of Information"), each of which provides citations to documents supporting that statement. In total, there are 97 documents supporting the 53 Statements of Information. NARA was able to locate duplicates of 81 of the documents included in the Roadmap that had been published or released as part of NARA's Watergate collection, or are available elsewhere in the public domain. *Id*. With respect to the Statements of Information (as opposed to the supporting documents), the number of still secret statements is even smaller, with only a few statements likely to be redacted.

The petition in this case is entirely subsumed within the *Shepard* petition. Indeed, petitioners here have expressly disavowed any intention of seeking the grand jury documents underlying the Statements of Information. *See* Petition at 2, n.1 ("This petition seeks only the Road Map and not the accompanying records."). In that respect, this petition is narrower than the *Shepard* petition, and the forthcoming release in that case will therefore exceed in large part what petitioners in this case have sought. Accordingly, to the extent an order has already issued requiring the release of a majority of the Roadmap, this petition is largely moot.

II. **WITH RESPECT TO THOSE FEW STATEMENTS OF INFORMATION THAT REMAIN PROTECTED BY CRIMINAL RULE 6(e), THE COURT SHOULD HOLD THE PETITION IN ABEYANCE**

As noted above, the vast majority of the Statements of Information will soon be released. For those few statements that remain secret grand jury information, this Court should defer ruling until the D.C. Circuit issues its decision in *McKeever*. That case addressed squarely the contested issue of whether the district courts have inherent authority to order the disclosure of protected grand jury information for reasons outside those articulated in Criminal Rule of Procedure 6(e). The case has been argued and a decision will be forthcoming.[1] The government has strong arguments favoring its view of Rule 6(e), and even if the D.C. Circuit rules otherwise, petitioners – who will have already received most of the Roadmap and whose stated purposes for filing the petition will have been realized through that release – will not be prejudiced by the short delay.[2]

---

[1] Another appeal raising the same legal issue was recently argued in the Eleventh Circuit. *See Pitch v. United States*, 11th Circuit No. 17-15016 (argued October 3, 2018).

[2] The government's request to hold in abeyance resolution of still-secret portions of the Roadmap applies equally to the *Shepard* case. If the Court agrees to hold the remaining parts of this petition in abeyance, it should also enter an order in *Shepard* holding in abeyance the

### A. The Government Has Strong Arguments that Rule 6(e) Comprehensively Regulates Grand Jury Proceedings, and Courts May Not Invoke Inherent Authority to Circumvent the Plain Text of the Rule

The D.C. Circuit will soon decide the *McKeever* case, in which it may find that district courts lack inherent authority to order grand jury information disclosed outside the confines of Rule 6(e), solely for the reason of historical or academic interest. Such a ruling would be determinative of the issues here, and would obviate the need for the Court and the parties to expend resources applying and weighing a nebulous, multi-factor test against the presumed secrecy of the grand jury information at issue.

The government's arguments are strong, particularly in this Circuit. The D.C. Circuit has never permitted the release of secret grand jury information for reasons of historical interest alone. To the contrary, the D.C. Circuit has explained that the Rule 6(e) "sets forth in precise terms to whom, under what circumstances and on what conditions grand jury information may be disclosed," *Fund for Constitutional Gov't v. Nat. Archives & Records Serv.*, 656 F.2d 856, 868 (D.C. Cir. 1981), and that consequently a district court cannot authorize any such disclosure "unless specifically permitted by one of the exceptions set forth in Rule 6(e)(3)." *In re Sealed Case*, 801 F.2d 1379, 1381 (D.C. Cir. 1986); *see also In re Sealed Case*, 250 F.3d 764, 769 (D.C. Cir. 2001) (rejecting argument that "there is a place for implied exceptions to the Rule" because "[t]he Rule on its face prohibits" a disclosure if "it does not except it from the general

---

government's obligation under the Court's October 11, 2018 Order to contact any affected individuals and address the remaining grand jury information under the so-called "*Craig*" factors.

prohibition").[3]  The Supreme Court has likewise stressed that Rule 6(e) "is, on its face, an affirmative limitation on the availability of court-ordered disclosure of grand jury materials," and that its list of exceptions reflect Congress's "judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy." *United States v. Baggot*, 463 U.S. 476, 479-80 (1983).  Indeed, because Rule 6(e)'s disclosure bar was enacted directly by Congress, this Circuit has held that Rule 6(e) qualifies as a "statute" that "specifically exempt[s]" records from disclosure for purposes of Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3). *See Fund for Constitutional Gov't*, 656 F.2d at 866-67.  If petitioners had filed a FOIA request for the still secret portions of the Roadmap, citing academic and historic interest, that request would have been denied on the ground that Rule 6(e) exempts that information from disclosure.  Nothing in Rule 6(e) suggests that petitioners should obtain a different result merely because they have applied directly to a district court.

Petitioners mistakenly suggest that the D.C. Circuit's opinion in *Haldeman v. Sirica,* 501 F.2d 714 (D.C. Cir. 1974) (*en banc*) supports their contention that historical interest is sufficient grounds on which to breach grand jury secrecy.  In that case, which predated Congress's direct enactment of the operative language in Rule 6(e), the D.C. Circuit refused to block the disclosure of the Roadmap to the Judiciary Committee of the House of Representatives in an investigation

---

[3] In the D.C. Circuit's lone (non-precedential) decision that squarely addressed the issue of whether grand jury information may be disclosed purely for reasons of academic and historic interest, now-Justice Ginsburg rejected the petition. *See In re Petition of Newman*, Petition for Writ of Certiorari, No. 88-548, 1988 WL 1094826 (Sept. 29, 1988) (finding that "[s]ince a claim of historical importance, without more, falls outside the scope of the Rule 6(e)(3) exceptions permitting disclosure, the district court's denial of Professor Newman's petition to unseal . . . was appropriate.")

related to Watergate.  The circuit court's *per curiam* order did not state the basis for its conclusion that the disclosure was consistent with Rule 6(e), *see id.* at 715 (noting only the Court's "general agreement with [the district court's] handling of these matters"), and the district court's opinion was similarly unclear about the justification for the disclosure, *see In re Report & Recommendation of June 5, 1972 Grand Jury Concerning Transmission of Evidence to the House of Representatives*, 370 F. Supp. 1219, 1227-30 (D.D.C. 1974).

But the D.C. Circuit has subsequently treated *Haldeman* as standing only for the proposition that an impeachment proceeding may qualify as a "judicial proceeding" for purposes of Rule 6(e).  *See In re Sealed Motion*, 880 F.2d 1367, 1379-80, 1380 n.16 (D.C. Cir. 1989) (per curiam) (discussing broad interpretation of the term "judicial proceeding" now found in 6(e)(3)(E)(i)); *see also In re Report*, 370 F. Supp. at 1228-30 (discussing interpretation of the term "judicial proceeding" and concluding that "it seems incredible that grand jury matters should be lawfully available to disbarment committees and police disciplinary investigations and yet be unavailable to the House of Representatives in . . . an impeachment investigation); *In re Madison Guar. Sav. & Loan Ass'n*, No. 94-1 (D.C. Cir. Special Div. July 7, 1998) (per curiam) (authorizing disclosure of grand jury materials to the House of Representatives for potential impeachment proceedings under the judicial proceeding exception) (attached at Exhibit A); *In re Grand Jury Proceedings of Grand Jury No. 81-1 (Miami)*, 669 F. Supp. 1072, 1075-76 (S.D. Fla.) (same), *aff'd*, 833 F.2d 1438 (11th Cir. 1987).  Nothing in *Haldeman* supports a district court's broad invocation of "inherent authority" to circumvent the requirements of Rule 6(e).

Petitioners also incorrectly rely on *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959) to suggest that the Supreme Court has endorsed a district court's "inherent

authority to permit the release of grand jury material under appropriate circumstances," including for atextual reasons. Petition at 10, 12. The discretion referenced in *Pittsburgh Plate Glass* was the discretion to make determinations *within* the text of a Rule 6(e)(3)(E) exception. *Pittsburgh Plate Glass Co.,* 360 U.S. at 398-99 (1959) (affirming the denial of a request for disclosure under Rule 6(e) while observing that disclosure under that rule is "committed to the discretion of the trial judge"). Indeed, the Court was clear that "*any* disclosure of grand jury minutes is covered by [Rule 6(e)]." *Id*. at 398 (emphasis added). *Pittsburgh Plate Glass*, therefore, only supports the government's position, and is consistent with Supreme Court's unbroken precedents cautioning against the use of inherent authority to circumvent the federal rules. *See Baggot*, 463 U.S. at 479 (stating that Rule 6(e) operates as "an affirmative limitation on the availability of *court-ordered disclosure* of grand jury materials") (emphasis added); *Carlisle v. United States*, 517 U.S. 416, 426 (1996) (holding that inherent power "does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure"); *accord Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988); *United States v. Hall*, 214 F.3d 175, 177-78 (D.C. Cir. 2000).

This jurisprudence comports with the Supreme Court's admonitions that inherent judicial power—that is, the power that inheres in federal courts by virtue of their status as courts—generally extends only to "actions that protect and vindicate the judicial process and the judicial institution itself." *Carlson v. United States*, 837 F.3d 753, 771 (2016) (Sykes, J., dissenting); *see, e.g.*, *United States v. Williams*, 504 U.S. 36, 45-46 (1992) (inherent powers "deal strictly with the courts' power to control their *own* procedures," including "improv[ing] the truth-finding process of the trial" and "prevent[ing] parties from reaping benefit or incurring harm from violations of

substantive or procedural rules . . . governing matters apart from the trial itself"). Even that narrow power is further circumscribed in the context of the grand jury, over which the district court exercises only "very limited" supervisory authority. *Williams*, 504 U.S. at 50, 47 (stating that "the grand jury is an institution separate from the courts, over whose functioning the courts do not preside").[4]

Given the strength of this authority, including the plain text of the rule and its history, this Court should wait for the D.C. Circuit's ruling with respect to those few items of information that will remain redacted in the forthcoming release of the Roadmap.

### B. Petitioners Will Not Be Prejudiced By a Short Delay

A short delay in adjudicating the remaining small portions of this petition will not prejudice petitioners, despite their protestations of urgency. This is true for a number of reasons.

Petitioners rely on two justifications for wanting the Roadmap released, but only one purports to be time sensitive. The first reason petitioners cite is the intrinsic historic value in the substance of what the grand jury provided to the House of Representatives. But as petitioners themselves note, to the extent the content of the Roadmap remains secret, it has been secret for more than forty years. *See* Petition at 17. Another month or two more will make little difference with respect to the substance of the redacted Statements of Information.

The real justification animating petitioners' claim for urgency is their argument that release of the Roadmap will allow them to offer their scholarship to inform the Special Counsel's

---

[4] The government's arguments as to why inherent authority provides no basis for district courts to order disclosure of grand jury information outside the contours of Rule 6(e), and specifically for reasons of historic interest, are laid out in detail in *McKeever, supra* (document #1734234) (filed June 4, 2018). Those arguments are not fully reproduced here, but are incorporated by reference and preserved as if set forth in full.

options with regard to any work product that he may or may not produce. *See* Petition at 19-20, Wittes Decl., ¶19, Goldsmith Decl., ¶¶ 23-25. Similarly, petitioners argue that the Roadmap will better position the public to evaluate the Special Counsel's actions. *See, e.g.,* Petition at 20; Goldsmith Decl., ¶¶ 27-28. For these reasons, petitioners argue, time is of the essence.

Petitioners' claim of exigency, while questionable to begin with, has largely been overtaken by events. When the redacted Roadmap is released in connection with the *Shepard* matter, it will satisfy all of petitioners' stated purposes in seeking disclosure. Any perceived urgency to this matter will necessarily dissipate, and no prejudice will result from holding in abeyance resolution of the final few Statements pending a decision from the D.C. Circuit.

Any assertion of urgency as to those final few Statements that remain redacted is further undermined by the fact that the *Shepard* disclosures will merely augment an already extensive public record relating to the Roadmap. As petitioners themselves recognize, the majority of the Roadmap was already in the public domain before this Court's order in *Shepard*, including the form that it took. Wittes Decl. at ¶ 15; Goldsmith Decl., ¶¶ 14-20, Indeed, Richard Ben-Veniste and Philip Allen Lacovara, who have some degree of personal knowledge, have described publicly the format and general content of the Roadmap. *See, e.g.,* Ben-Veniste Decl., ¶¶ 9-11; Lacovara Decl., ¶15. Mr. Ben-Veniste underscored the public nature of the Roadmap's contents. Citing the extensive public record of Watergate, Mr. Ben-Veniste attests that, "[b]ased on my first-hand recollection of the structure and content of the Road Map, I can confirm that those publications viewed in their totality contained most, if not all, of the information that was referenced in the Road Map." Ben-Veniste Decl., ¶ 14. Given the public nature of most of the information in the Roadmap, therefore, as well as its well-known format and structure, scholars

9

can already analyze the Watergate model, and can fully inform the public as to how any future Special Counsel product might compare.  They will not be prejudiced by a short delay with respect to the limited, non-public portions pending the D.C. Circuit's forthcoming decision.[5]

## CONCLUSION

For the foregoing reasons, the Court should determine that this matter is largely moot, and hold in abeyance those portions that are not moot until the D.C. Circuit issues its decision in *McKeever*.

Dated:  October 12, 2018                                     Respectfully submitted,

                                                                                     JOSEPH H. HUNT
                                                                                     Assistant Attorney General


                                                                                     /s/ *Elizabeth J. Shapiro*
                                                                                     ELIZABETH J. SHAPIRO
                                                                                     United States Department of Justice
                                                                                     Civil Division, Federal Programs Branch
                                                                                     1100 L Street, NW
                                                                                     Washington, DC 20530
                                                                                     Phone: (202) 514-5302
                                                                                     Fax: (202) 616-8470
                                                                                     Email: Elizabeth.Shapiro@usdoj.gov

---

[5] For the same reasons, to the extent petitioners wish to assist the Special Counsel in evaluating his options, the public record already permits such analysis.  Although Petitioner Bates notes that he attempted to obtain the Roadmap from NARA when he worked for Independent Counsel Starr, and was unsuccessful, s*ee* Petition at 19; Bates Decl., ¶¶ 15-16, he does not say whether he looked to public sources or sought the Roadmap under Criminal Rule 6(e).  Prof. Bates also notes that Independent Counsel Starr's investigation provides no meaningful precedent because 28 U.S.C. § 595(c) authorized direct transmittal of a report to the House of Representatives.  *See* Bates Decl, ¶¶ 15, 23-24.  The Independent Counsel did, however, seek judicial authorization to transmit his report, which the D.C. Circuit granted pursuant to Rule 6(e)(3)(E)(i) (preliminarily to or in connection with a judicial proceeding).  *See* Exh. A.

9

# Tab B

# Order Permitting Disclosure of Grand Jury Material

United States Court of Appeals
For the District of Columbia Circuit

UNITED STATES COURT OF APPEALS  FILED  JUL  7 1998
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Special Division

Division for the Purpose of
Appointing Independent Counsels

Ethics in Government Act of 1978, As Amended

In Re:   Madison Guaranty Savings        Division No. 94-1
         & Loan Association

**FILED UNDER SEAL**

Before:   SENTELLE, *Presiding Judge*, and BUTZNER and FAY, *Senior Circuit Judges*.

## ORDER

Upon consideration of the "Ex Parte Motion for Approval of Disclosure of Matters Occurring Before a Grand Jury" filed by Independent Counsel Kenneth W. Starr on July 2, 1998, the Court finds that it is appropriate for the Independent Counsel to convey the materials described in that motion to the House of Representatives. Accordingly, it is

**ORDERED** that the motion be granted. The Court hereby authorizes the Independent Counsel to deliver to the House of Representatives materials that the Independent Counsel determines constitute information of the type described in 28 U.S.C. § 595(c). This authorization constitutes an order for purposes of Federal Rule of Criminal Procedure 6(e)(3)(C)(i) permitting disclosure of all grand jury material that the independent counsel deems necessary to comply with the requirements of § 595(c). This order may be disclosed as required in connection with the Independent Counsel's compliance with his statutory mandate.

Per Curiam

For the Court:
Mark J. Langer, Clerk

by

Marilyn R. Sargent
Chief Deputy Clerk